UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROSALIO PENA RUBIO, | ) |
| | ) |
| Plaintiff, | ) Case No. C09-1372-MJP-BAT |
| | ) |
| v. | ) **REPORT AND** |
| | ) **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

Plaintiff, Rosalio Rubio seeks judicial review of the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration. Dkt. 1. He contends the ALJ erred by failing to (1) give specific and legitimate reasons to reject the 2008 opinion of treating physician Cheryl Hayes, D.O., (2) give any reason to reject the observations of plaintiff's Pastor Rafael Gradilla, and (3) meet the Commissioner's burden of production at step five. Dkt. 10.

For the reasons below, the Court recommends the Commissioner's decision be **REVERSED** and this case be **REMANDED** for further proceedings.

**I.  FACTUAL AND PROCEDURAL HISTORY**

Plaintiff is currently 42 years old, has completed the sixth grade in Mexico, and has past work experience as a field worker, cook, sales person, forklift driver, landscaping laborer, and

REPORT AND
RECOMMENDATION – 1

busboy. Tr. 77. On March 13, 2006, he applied for disability insurance benefits alleging disability as of October 2, 2001. Tr. 58. His application was denied initially and on reconsideration. Tr. 48-49, 51-53. After a hearing conducted on July 9, 2008, the ALJ issued a decision on October 23, 2008 finding plaintiff not disabled. Tr. 13.

Applying the five-step sequential evaluation process for determining whether a claimant is disabled,[1] the ALJ at step one found plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 2, 2001. Tr. 18.

At step two, the ALJ found plaintiff had the following severe impairments: residuals of multiple right lower extremity fractures; chronic adjustment disorder with depressed mood; and post traumatic stress disorder. *Id*.

At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 19.

Before proceeding to step four, the ALJ found that through the date last insured, plaintiff had the residual functional capacity ("RFC") as follows:

> [plaintiff ]has no limitations on sitting and no limitations on visual or manipulative abilities; he can walk (with a cane) or stand for 2 hours total in an 8 hour day; he can carry up to 10 pounds; he can lift 20 pounds regularly and 40 pounds occasionally; he can climb, bend, stoop, crawl, and crouch occasionally; he should avoid vibration; and he should have only occasional public contact.

Tr. 20.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. Tr. 25.

At step five, considering plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national

---

[1] 20 C.F.R. §§ 404.1520
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND
RECOMMENDATION – 2

economy that the claimant can perform and that plaintiff is therefore not disabled. Tr. 26.

The Appeals Council denied review of the ALJ's decision, making it the Commissioner's final decision under 42 U.S.C. § 405(g). Tr. 5-7.

## II. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ determines credibility and resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## III. DISCUSSION

**A.     Medical opinion of Dr. Cheryl Hayes, D.O.**

Treating physician Cheryl Hayes D.O., who began treating plaintiff in 2002, opined on February 9, 2004 that plaintiff was able to work on a full time basis. Tr. 325. Thereafter, plaintiff did not see Dr. Hayes until June 10, 2008. Tr. 491. After Dr. Hayes examined plaintiff that day, she opined plaintiff "was not able to work following the closure of this claim on January 14, 2003." Tr. 415. The ALJ gave considerable weight to Dr. Hayes' 2004 opinion and "little weight" to her 2008 opinion on the grounds that Dr. Hayes had not examined plaintiff between 2004 and 2008, and failed to mention any new, objective evidence supporting her change in opinion. Tr. 23.

Where a treating physician's opinion is contradicted, it may not be rejected without

REPORT AND
RECOMMENDATION – 3

1  "'specific and legitimate reasons' supported by substantial evidence in the record." *Lester v.*
2  *Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502
3  (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts
4  and conflicting evidence, stating his interpretation of the facts and evidence, and making
5  findings. *Magallanes*, 881 F.2d at 751. The ALJ must do more than offer his conclusions; he
6  must also explain why his interpretation, rather than the treating doctor's interpretation, is
7  correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 f.2d 418,
8  421-22 (9th Cir. 1988).

9        Plaintiff contends the ALJ failed to give specific and legitimate reasons to reject Dr.
10 Hayes' 2008 opinion. Dkt. 10 at 11. Plaintiff first argues that the 4 year treatment gap does not
11 detract from Dr. Hayes' 2008 opinion because Dr. Hayes "reviewed her treatment notes,
12 examined plaintiff and was in the best position of any is physician to offer an opinion regarding
13 plaintiff's limitations." *Id*. This argument does not resolve Dr. Hayes' two conflicting opinions.
14 While Dr. Hayes indicated in 2008 that she had reviewed her past records and examined
15 plaintiff, she did not explain why she was reversing her 2004 opinion. An ALJ may properly
16 discount an opinion for lack of detail or explanation. *See* 20 C.F.R. § 404.1527(d)(3) ("The
17 better an explanation a source provides for an opinion, the more weight we will give that
18 opinion.").

19       Plaintiff next argues the ALJ erred because Dr. Hayes' 2008 records show plaintiff's
20 "condition had advanced due to chronic regional pain syndrome ("CRPS"), which the ALJ failed
21 to consider" and because there are "new findings including erythema of the foot with blotchiness
22 and what appeared to be trophic skin changes, which are consistent with CRPS. SSR 03-2p."
23 Dkt. 10 at 11. Dr. Hayes' records do not support this argument. Dr. Hayes stated:

REPORT AND
RECOMMENDATION – 4

> Records will verify that he suffered a fall which caused a left
> femur fracture, a right tibial plateau fracture, sciatic neuropathy,
> and chronic dysesthesias of the right lower extremity with probable
> reflex sympathetic dystrophy syndrome.  It is my opinion that as a
> result of these injuries, Mr. Pena was not able to work following
> the closure of his claim on January 13, 2004.

Tr. 415.  There is nothing here indicating plaintiff's condition "advanced" due to CRPS.  It is not clear Dr. Hayes even diagnosed plaintiff with CRPS in 2008.  Dr. Hayes stated only that plaintiff has "right leg dysesthesias with probable chronic regional pain syndrome," (Tr. 419) indicating that she suspects but has not diagnosed plaintiff with CRPS.  Plaintiff obviously believes the statement should be read the other way around but the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  Moreover, even if the Court assumed Dr. Hayes diagnosed plaintiff with CRPS in 2008, that diagnosis still does not explain why in 2004 she concluded plaintiff could work.

Plaintiff also argues the ALJ erred in finding plaintiff has the RFC to sit more than 30 minutes.  Dkt. 10 at 11.  This argument is based on a letter Dr. Hayes wrote in August 2008 that she "would like to amend [her] statement of February 5, 2003 in which she indicated he could sit for two hours."  Tr. 417.  However, as the doctor gives no explanation for the amendment other than it is "based on what I know and have learned about Mr. Pena," the Court will not disturb the ALJ's findings.

**B**     **The ALJ's assessment of Pastor Gradilla's lay evidence**

Pastor Gradilla completed a Third-Party Function Report in which he stated plaintiff is unable to sit for long periods of time without extreme discomfort.  Tr. 100.  Although the ALJ noted plaintiff's report of low energy and anhedonia were partially supported by the pastor's statement, plaintiff argues the ALJ erred in failing to discuss the pastor's statements about

REPORT AND
RECOMMENDATION – 5

1  plaintiff's sitting problems.  Tr. 19; Dkt. 10 at 12-13 and Dkt. 12 at 6.  The Commissioner argues

2  the ALJ did not err because "no significant, probative evidence of sitting limitations was

3  contained in Pastor Gradilla's report."  Dkt. 13 at 24.

4      If lay testimony is controverted by the medical evidence, then the ALJ does not err by

5  ignoring it.  *Vincent*, *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  Here, Dr. Jordan

6  Firestone, M.D., an examining doctor, opined that plaintiff had no sitting limitations.  Tr. 392.

7  Additionally, an ALJ need not discuss all evidence presented.  *See Vincent*, at 1394-95.  Rather,

8  an ALJ must explain why "significant probative evidence has been rejected."  *Id*.  (*citing Cotter*

9  *v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981).  Here, a vocational expert ("VE") testified that even

10 if plaintiff were limited to 30 to 60 minutes of sitting at one time, he could work.  Tr. 465.  The

11 VE further opined that if plaintiff were "unable to stay on task and meet production

12 requirements, then the sitting limitations would be a problem."  *Id. at 465*.  Plaintiff, however,

13 indicated at the hearing before the ALJ that he could sit for about 30 minutes and be comfortable.

14 Tr. 439.

15      The pastor's statement about plaintiff's sitting problems is not probative of the impact

16 plaintiff's sitting limitations has on his ability to work.  The statement is vague; it is unclear what

17 the pastor means when he says plaintiff is unable to sit for long periods of time.  Does he mean

18 more than 30 minutes or three hours?  Moreover, even if the pastor meant 30 minutes, the ALJ

19 considered that limitation in the hypothetical question that was posed to the VE.  Equally unclear

20 is what the pastor means by "extreme discomfort."  Does he mean plaintiff is uncomfortable but

21 functional or does he mean plaintiff is in so much distress he is non-functional?  Because the

22 statement is ambiguous, it is not probative of whether plaintiff has the capacity to stay on task

23 despite sitting discomfort.  Accordingly, the Court concludes the ALJ did not err in not

REPORT AND
RECOMMENDATION – 6

discussing the pastor's statement about plaintiff's sitting problems.

**C.    The ALJ erred at step five**

Because the ALJ at step four found plaintiff cannot perform past relevant work, the Commissioner, at step five must show plaintiff can perform other jobs that exist in the national economy. *Bray v. Astrue*, 554 F.3d 1219, 1222 (9th Cir. 2009). To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations.'" *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (*quoting Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[3] *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). Because the ALJ in this case found the Grids do not adequately take into account plaintiff's abilities and limitations, the ALJ consulted a vocational expert ("VE").[4] Tr. 26.

The VE testified, and the ALJ found, that given plaintiff's age, education, work experience and residual functional capacity, plaintiff could perform light work as a small parts or electronics assembler. *Id.* Light work requires a worker to have the capacity to lift, carry, push, or pull up to 20 pounds occasionally and up to 10 pounds frequently. *See* Dictionary of Occupational Titles ("DOT"), App. C. The ALJ however found plaintiff could carry no more

---

[3] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants. Each rule defines a vocational profile and determines whether sufficient work exists in the national economy. These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity ." Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

[4] *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

REPORT AND
RECOMMENDATION – 7

1  than 10 pounds (Tr. 20) and included this restriction in the hypothetical he posed to the VE.  Tr.
2  461.  Given this conflict, plaintiff argues the ALJ erred in relying on the VE's testimony that
3  plaintiff can perform light work as a small parts or electronics assembler.  Dkt. 12 at 13.
4        The Commissioner argues there is no conflict between the VE's testimony that plaintiff
5  could do light work as an assembler and the DOT's definition of light work because the
6  assembler jobs are "primarily 'bench work' positions that would allow a person with Plaintiff's
7  limitations to perform the work activities." Dkt. 11 at 17.  This argument is not supported by the
8  record.  The VE's testimony that the assembler positions involve bench work was not directed to
9  plaintiff's carrying limitations.  Instead, the testimony addressed plaintiff's use of a cane and
10 sitting limitations.  Tr. 465.
11       An ALJ may accept VE testimony that conflicts with the Dictionary of Occupational
12 Titles if the record contains persuasive evidence to support the deviation.  *Johnson v. Shalala*, 60
13 F.3d 1428, 1435 (9th Cir. 1995).  The ALJ must first determine whether a conflict exists.
14 *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).  If a conflict exists, "the ALJ must then
15 determine whether the vocational expert's explanation for the conflict is reasonable and whether
16 a basis exists for relying on the expert rather than the Dictionary of Occupational Titles." *Id*.
17       In this case, the ALJ failed to ask the VE about the conflict between plaintiff's carrying
18 limitations and the DOT classification.  Under the Commissioner's own Social Security Ruling,
19 SSR 00-4p, the ALJ in this case was required to specifically inquire into any conflicts between
20 the VE's testimony and the DOT classifications, and to obtain a "reasonable explanation" for any
21 conflicts.  *Id.* at 1152-53.  The ALJ failed to do so here.  This failure prevents the Court from
22 being able to determine whether substantial evidence supports the ALJ's step-five findings.  *Id*. at
23 1153-54.  The matter should thus be remanded so that the ALJ can perform the appropriate

REPORT AND
RECOMMENDATION – 8

inquiries under SSR 00-4p.

Plaintiff also argues the ALJ erred at step five regarding the impact of his language and educational limitations. The Court concludes the record was not sufficiently developed to permit the Court to determine whether these limitations prevent plaintiff from performing the jobs identified by the VE or so limit the number of jobs available that plaintiff is unemployable. These matters should thus be reevaluated by the ALJ.

Plaintiff further argues the ALJ erred in failing to consider plaintiff's ability to use his hands, or plaintiff's sitting difficulties. Plaintiff argues that two dexterity tests performed by vocational specialist Earl Shimogawam, M.Ed. show he has problems using his hands. Dkt. 10 at 19-20. These tests show plaintiff's performance is average for his dominant hand and below average for his non-dominant hand. Tr. 221. The ALJ placed little weight on Mr. Shimogawam's opinion that plaintiff cannot work because it was not consistent with Dr. Firestone's opinions which included a finding that plaintiff did not have manipulative or hand limitations, and because it was inconsistent with plaintiff's own reported activities. Tr. 25. It is also worth noting that plaintiff did not report in the function report he prepared that he had any limitations in using his hands. Tr. 90. The Court will therefore not disturb the ALJ's assessment of plaintiff's ability to use his hands.

And lastly, plaintiff argues the ALJ erred in assessing plaintiff's sitting limits by failing to address Pastor Gradilla's observations. Dkt. 12 at 10. As discussed above, because Pastor Gradilla's observations are not probative, the ALJ did not err in failing to mention them.

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends that this case be **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Report and

REPORT AND
RECOMMENDATION – 9

Recommendation. The ALJ should reevaluate step five, as discussed above. A proposed order accompanies this Report and Recommendation.

DATED this 7th day of May, 2010.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND
RECOMMENDATION – 10